William J. Maledon, 003670
Dawn L. Dauphine, 010833
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona  85012-2793
(602) 640-9000
wmaledon@omlaw.com
ddauphine@omlaw.com

Charles A. Gilman (*Pending Pro Hac Vice*)
John A. Eakins (*Pending Pro Hac Vice*)
Erin McAlister (*Pending Pro Hac Vice*)
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
(212) 701-3403
cgilman@cahill.com
jeakins@cahill.com
emcalister@cahill.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Karl Eller and Joan Eller; and The University of Arizona Foundation, | Case No. _____ |
|---|---|
| Plaintiffs, | **NOTICE OF REMOVAL** |
| vs. | |
| UBS AG; UBS AG, Stamford Branch; UBS AG, London Branch; and UBS (Cayman), Ltd., | |
| Defendants. | |

PLEASE TAKE NOTICE that, reserving any and all defenses, including without limitation insufficiency of service of process and lack of personal jurisdiction, Defendant UBS AG (on its own behalf and on behalf of its branches UBS AG Stamford Branch and UBS AG London Branch, and on behalf of its now-dissolved affiliate UBS (Cayman), Ltd. (collectively "Defendants")), by and through its undersigned attorneys, hereby removes the above-captioned action bearing Case No. CV2013-010042, pending in the Superior Court of the State of Arizona in and for the County of Maricopa, to the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1441 *et seq.*

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332. The grounds for removal are set forth herein.

**I.      THE COMPLAINT**

1. On or about July 22, 2013, Plaintiffs Karl Eller and Joan Eller (together "Eller") and The University of Arizona Foundation ("Foundation") (collectively, "Plaintiffs") filed a complaint (the "Complaint") in the Superior Court of the State of Arizona in and for the County of Maricopa, Case No. CV2013-010042 (the "State Court Action"). The Complaint is attached hereto as **Exhibit A**.

2. UBS AG was purportedly served with the Complaint on September 3, 2013. UBS AG Stamford Branch was purportedly served on September 3, 2013. UBS AG London Branch was purportedly served on September 3, 2013. UBS (Cayman), Ltd. was purportedly served on September 3, 2013. *See* **Exhibit B**.

3. The Complaint alleges that Plaintiffs Karl and Joan Eller are residents of Maricopa County, Arizona. (Complaint ¶ 2)

4. The Complaint alleges that Plaintiff The University of Arizona Foundation is "based out" of Pima County, Arizona. (Complaint ¶ 3) The University of Arizona Foundation is incorporated in Arizona as a non-profit corporation and located at 1111 N. Cherry Ave., Tucson, AZ 85721. Attached hereto as **Exhibit C** is a true and correct report from the State of Arizona Public Access System reflecting The University of Arizona Foundation's corporate status.

5. Defendant UBS AG is an aktiengesellschaft organized under Swiss company law with a principal place of business in Zurich and Basel, Switzerland. Affidavit of Karen R. Kowalski, attached hereto as **Exhibit D** (the "Kowalski Aff.") at ¶ 3.

6. Defendant UBS AG, Stamford Branch, is a foreign bank branch of UBS AG. Kowalski Aff. ¶ 4.

7. Defendant UBS AG, London Branch, is a foreign bank branch of UBS AG. Kowalski Aff. ¶ 5.

2

8.     Defendant UBS (Cayman) Ltd. was a company organized under the laws of the Cayman Islands, British Oversea Territory.  Kowalski Aff. ¶ 6.  UBS (Cayman) Ltd. was dissolved on December 18, 2009.  Kowalski Aff. ¶ 6.

9.     The Complaint alleges four counts: Count I – Violation of Arizona Revised Statute § 13-2314.04, Count II – Civil Conspiracy, Count III – Aiding and Abetting Fraud, and Count IV – Aiding and Abetting Breach of Fiduciary Duty.  *See* Complaint ¶¶ 178-263.

10.    The Complaint alleges that Defendants and co-conspirators, not named as defendants therein, Quellos Group, LLC f/k/a Quadra Capital Management, L.P. ("Quellos") and PricewaterhouseCoopers ("PwC"), designed, promoted, and opined on a financial product known as a contingent deferred swap ("CDS"), which was a "sophisticated income tax shelter," in which Eller invested.  Complaint. ¶ 1; 53.  The particular investment entity in which Eller invested was Saguaro Trading Partners, LP ("Saguaro").  Complaint ¶ 53.  Eller invested $31 million for a limited partner stake in Saguaro.  *Id.*  Quellos was Saguaro's general partner and was responsible for managing Saguaro's investment portfolio.  *Id.*  At a later point in time, a second partnership was created, STP Trading Partners LP ("STP"), in which Quellos was a general partner, and Saguaro was a limited partner.  Complaint ¶ 55.

11.    The Complaint alleges that Quellos introduced Eller to the CDS strategy, and that Eller "chose Quellos for a portion of their investable funds and signed subscription and limited partnership agreements in the fall of 1999."  Complaint ¶ 43.

12.    The Complaint alleges that "CDS Promoters," though not identifying any persons in particular, represented that investing in a CDS would yield potential profits from trading as well as "lawful ordinary [tax] losses in investment year one, and convert those ordinary losses to capital gains in investment year two," Complaint ¶¶ 31, 49, and that PwC issued a tax opinion supporting the tax treatment of the transaction.  Complaint ¶ 58.

3

13. The Complaint alleges, as part of the trading strategy, Saguaro and STP entered into a CDS with UBS on October 8, 1999.  Complaint ¶ 59.  The initial notional principal amount of Saguaro's CDS was $1,254,000,000, and the initial notional principal amount of STP's CDS was $906,000,000.  *Id.*  The Complaint alleges that UBS provided a loan to Saguaro of up to $15,000,000, with an initial draw down of $10,349,985.  Complaint ¶ 53.  The Complaint also alleges that Saguaro deposited $22,324,782 in an account with UBS as collateral and STP deposited $16,129,387.  Complaint ¶ 56.

14. The Complaint alleges, among other fees, that "[a]t least a portion of the fees that UBS earned on this deal came out of the floating rate payments.  For example, of the $266,524.29 Saguaro/STP contribution for the January 200 swap, $77,351.14 was paid to UBS and only $189,173.15 was actually swapped to Offshore and then back to UBS to be invested in QSPI."  Complaint ¶ 84.

15. The Complaint also alleges that "[a]t PwC's direction, the Ellers claimed large ordinary losses relating to Saguaro in 1999, 2000, and 2001.  In 2002, on maturity of the CDS transaction, the Ellers reported a large long-term capital gain."  Complaint ¶ 145.  However, "[t]he IRS subsequently audited the Partnerships' tax returns for the years 1999-2002," Complaint ¶ 150, and in 2006, the IRS sought to recover back taxes plus interest and penalties from Eller.  Complaint ¶ 153.

16. The Complaint alleges that "Plaintiffs ultimately settled with the IRS in a deal which disallowed almost all of the partnership losses the Ellers claimed for the tax years 1999 through 2001.  Plaintiffs were also assessed a 5 percent underpayment penalty from the adjustments."

17. In fact, the United States Tax Court issued two decisions (ignored in the Complaint), in which Eller was a petitioner, determining income and losses for Saguaro and STP.  Those decisions reduced Saguaro's loss from $31,239,899 to $13,059,123 for 1999, from $9,789,414 to $4,112,339 for 2000, and from $1,687,529 to $494,061 for 2001, and reduced its gain in 2002 from $42,473,000 to $17,000,000.  Those decisions

4

1  reduced STP's loss from $13,156,870 to $23,874 for 1999, from $4,123,676 to $19,661
2  for 2000, and from a $760,361 loss to a $101,906 gain for 2001, and reduced its gain in
3  2002 from $22,629,940 to $4,000,000.  Attached hereto as **Exhibit E** and **Exhibit F** are
4  true and correct copies of the December 3, 2010 United States Tax Court Decisions for
5  Saguaro and STP.

6        18.    In Count I, the Complaint alleges that "Plaintiffs are entitled to recover
7  damages that reasonably flow from UBS and its co-conspirators' pattern of unlawful
8  activity in promoting, facilitating, and misrepresenting the business purpose and legality
9  of the CDS facility, including, but not limited to, the CDS transaction fees paid, the
10 needless investment expenses, the attorneys' and accountants' fees paid in negotiating
11 settlements with the IRS, back taxes and interest paid by the Ellers to the taxing
12 authorities, and such other and further damages as reasonably flow therefrom."
13 Complaint ¶ 198.  The Complaint also alleges that Plaintiffs are entitled to compensatory
14 and treble damages under A.R.S. § 13.2314.04.  Complaint ¶ 200.

15       19.    In Count II, the Complaint alleges that "Plaintiffs are entitled to recover
16 damages that reasonably flow from the conspiracy described above, including but not
17 limited to, the CDS transaction fees paid, the needless investment expenses, the costs,
18 expenses, attorneys', and accounts' feeds paid in negotiating settlements with the IRS,
19 back taxes and interest paid by to [*sic*] the taxing authorities, and such other further
20 damages as reasonably flow therefrom."  Complaint ¶ 208.

21       20.    In Count III, the Complaint alleges that "Plaintiffs are entitled to recover
22 damages that reasonably flow from the conspiracy described above, including but not
23 limited to, the CDS transaction fees paid, the needless investment expenses, the costs,
24 expenses, attorneys', and accounts' feeds paid in negotiating settlements with the IRS,
25 back taxes and interest paid by to [*sic*] the taxing authorities, and such other further
26 damages as reasonably flow therefrom."  Complaint ¶ 236.

27       21.    In Count IV, the Complaint alleges that "Plaintiffs are entitled to recover
28 damages that reasonably flow from the conspiracy described above, including but not

5

limited to, the CDS transaction fees paid, the needless investment expenses, the costs, expenses, attorneys', and accounts' feeds paid in negotiating settlements with the IRS, back taxes and interest paid by to [*sic*] the taxing authorities, and such other further damages as reasonably flow therefrom." Complaint ¶ 263.

22. Finally, the Complaint's prayer for relief requests an award of damages in an amount to be proven at trial, punitive damages, treble damages, costs, reasonable attorneys' fees pursuant to A.R.S. § 13-2314.04(A) together with pre-judgment interest on such damages pursuant to A.R.S. § 13-2314.04(D)(5), pre- and post-judgment interest, and for other and further relief as the Court deems just and proper.

## II. <u>BASIS FOR REMOVAL – DIVERSITY JURISDICTION</u>

23. This action is removable pursuant to 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1332, this Court has original jurisdiction over this matter because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a state and citizens of a foreign state. 28 U.S.C. § 1332(a)(2).

24. The Complaint alleges that plaintiffs Karl and Joan Eller reside in Arizona, and are subject to United States federal income tax, *see* Complaint ¶¶ 2, 171-72. The Ellers are therefore citizens of Arizona.

25. Plaintiff The University of Arizona Foundation is incorporated in Arizona, *see* **Exhibit C**, with a principal place of business in Arizona, *see* Complaint ¶ 3, and is therefore a citizen of Arizona. *See* 28 U.S.C. § 1332(c)(1).

26. Defendant UBS AG is a Swiss aktiengesellschaft with its principal place of business in Zurich and Basel, Switzerland, *see supra* ¶ 5, and is therefore a citizen of the Swiss Confederation. *See* 28 U.S.C. § 1332(c)(1); *Cohn* v. *Rosenfeld*, 733 F.2d 625, 629 (9th Cir. 1984) (noting foreign aktiengesellschaft as a party creates diversity under 28 U.S.C. § 1332(a)(2)).

27. Defendant UBS AG Stamford Branch is foreign bank branch of UBS AG, *see supra* ¶ 6, which is a citizen of the Swiss Confederation. *See supra* ¶ 26.

28. Defendant UBS AG London Branch is a foreign bank branch of UBS AG, *see supra* ¶ 7, which is a citizen of the Swiss Confederation. *See supra* ¶ 26.

29. Defendant UBS (Cayman) Ltd. was dissolved on December 18, 2009, and was formerly a company organized under the laws the Cayman Islands, British Overseas Territory. *See supra* ¶ 8.

30. In determining the amount-in-controversy for purposes of diversity jurisdiction, courts take into consideration, in addition to compensatory damages, any additional recoverable damages, including treble damages when prescribed as recoverable for a particular cause of action. *See Fromkin v. IndyMac Bank FSB*, 2010 WL 1381670, at *1 (D. Ariz. March 31, 2010) (including treble damages to find jurisdictional threshold established).

31. Where, as here, the plaintiff has not specifically averred the amount in controversy, the court is not confined to the face of the complaint and may consider additional evidence to determine whether the amount-in-controversy is sufficiently established. *See Valdez* v. *Allstate Insurance Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("[W]e reiterate that the amount-in-controversy inquiry in the removal context is not confined to the fact of the complaint.") (citations omitted); *see also* 28 U.S.C. § 1446(c)(2)(A)(ii) (notice of removal may assert the amount in controversy if the initial pleading seeks a money judgment, but state practice does not permit demand for a specific sum); A.R.S. R. Civ. P. 8(g) ("no dollar amount or figure for damages sought shall be stated in any pleading allowed under Rule 7(a) of these Rules").

32. Without conceding its applicability here, A.R.S § 13-2314.04(A) does provide a private cause of action that includes as a remedy "recovery of up to treble damages and the costs of the suit, including reasonable attorney fees for trial and appellate representation." *See also Lacy* v. *County of Maricopa*, 2008 WL 312095, at *2 (D. Ariz. Feb. 1, 2008) ("As for the state RICO claim, A.R.S. § 13-2314.04(a) provides a private cause of action to any person who 'sustains reasonably foreseeable injury . . . by a pattern of racketeering activity.'").

7

33. The amount-in-controversy threshold is easily met here. The Complaint specifically pleads that UBS received, at least, transaction fees of $77,351.14. Complaint ¶ 84. Plaintiffs seek to recover alleged damages including "CDS transaction fees paid" and "needless investment expenses," in which Plaintiffs further allege that they are entitled to treble damages. Complaint ¶¶ 198, 200; *see also* ¶¶ 208, 236, 263. On that basis alone, the jurisdictional threshold is established.

34. Additionally, while the Plaintiffs did not specifically plead the settlement they reached with the IRS, the United States Tax Court decision disallowed millions of dollars of loses. *See supra* ¶ 17.[1] Assuming certain reasonable assumptions about the Eller's federal tax situation, those disallowances likely resulted in an additional tax liability well in excess of $75,000, exclusive of interest and costs. Plaintiffs specifically seek alleged damages including "back taxes and interest paid by the Ellers to the taxing authorities," which again they claim should be trebled, Complaint ¶¶ 198, 200; *see also* ¶¶ 208, 236, 263, which results in an amount in controversy well in excess of the jurisdictional threshold.

### III.   PROCEDURAL REQUIREMENTS

35. Removal is timely. The Defendants were purportedly served in the State Court Action on September 3, 2013. *See supra* ¶¶ 2. The notice of removal has been filed within 30 days of purported service of the State Court Action on Defendants. *See* 28 U.S.C. § 1446(b).

36. Defendants are providing a true and correct copy of all the process, pleadings, or orders on file in the State Court Action annexed hereto as **Exhibit A**. 28 U.S.C. § 1446(a)

---

[1] The Court is permitted to take judicial notice of the decisions in the related United State Tax Court actions. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 n.6 (9th Cir. 2006) (court "may take judicial notice of court filings and other matters of public record").

37. Promptly upon the filing of this Notice of Removal, a true copy of this Notice of Removal will be provided to all adverse parties pursuant to 28 U.S.C. § 1446(d).  Pursuant to Fed. R. Civ. P. 5(d), Defendants will file with this Court a Certificate of Service of Notice to Adverse Parties of Removal to Federal Court.

38. Concurrently with the filing of this Notice of Removal, Defendants are filing a notification of Filing of Notice of Removal with the Clerk of the Superior Court of the State of Arizona in and for the County of Maricopa in accordance with 28 U.S.C. § 1446(d).

39. This notice of Removal is signed pursuant to Fed. R. Civ. P. 11.

WHEREFORE, this action should proceed in the United States District Court for the District of Arizona as an action properly removed thereto.

DATED this 11th day of September, 2013.

OSBORN MALEDON, P.A.


By s/ William J. Maledon
   William J. Maledon
   Dawn L. Dauphine
   2929 N. Central Avenue, Suite 2100
   Phoenix, Arizona  85012-2793

CAHILL GORDON & REINDEL LLP
   Charles A. Gilman (*Pending PHV*)
   John A. Eakins (*Pending PHV*)
   Erin McAlister (*Pending PHV*)
   80 Pine Street
   New York, New York 10005

**Attorneys for Defendants**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2013, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

I hereby certify that on September 11, 2013, I served the attached document by mail on the following, who are not registered participants of the CM/ECF System:

Leo R. Beus
A. Erin McGuinness
Abigail M. Terhune
BEUS GILBERT PLLC
701 N. 44th Street
Phoenix, AZ 85008

**Attorneys for Karl Eller; Joan Eller**

Gregory V. Gadarian
GADARIAN & CACY PLLC
2200 E. River Road, Suite 123
Tucson, AZ 85718

**Attorneys for The University of Arizona Foundation**

s/ Jessica A. Lopez
5072417